## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**COREY JERMAINE PARKER,**

    **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**Case No: 6:12-cv-1773-Orl-28KRS**
**(6:08-cr-216-Orl-28KRS)**

## ORDER

Petitioner Corey Jermaine Parker was convicted in 2009 of one count of possession

with intent to distribute cocaine hydrochloride and cocaine base and one count of carrying

a firearm during and in relation to a drug trafficking offense, and he was sentenced to 120

months' imprisonment. (Case No. 6:08-cr-216-Orl-28KRS, Doc. 125).[1]  Petitioner is now

before the Court on his amended motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255, in which he brings eighteen claims, most of which allege

ineffective assistance of counsel. (Doc. 10).  The Court has considered the motion, the

Government's Response (Doc. 13), filed in compliance with this Court's instructions and

with the *Rules Governing Section 2255 Proceedings for the United States District Courts*,

and Petitioner's Reply (Doc. 17), and for the following reasons concludes that Petitioner is

not entitled to relief.

---

[1]Hereinafter, docket entries in Case No. 6:08-cr-216-Orl-28KRS will be referred to
as "Crim. Doc."

## I.   Procedural History

A grand jury returned an Indictment charging Petitioner with conspiracy to possess with intent to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count One), possession with intent to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count Two), and using and carrying firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). (Crim. Doc. 1). Prior to trial, the Government dismissed Count One of the Indictment. (Crim. Docs. 89 and 93). After a jury trial in which several law enforcement officers, two chemists, and a confidential informant testified for the Government, Petitioner was convicted of Counts Two and Three.[2] (Crim. Doc. 114). The jury made a special finding that Petitioner possessed five grams or more of "cocaine base, commonly known as crack cocaine." (Id.). On May 29, 2009, the Court sentenced Petitioner to two consecutive sixty-month terms of imprisonment. (Crim. Doc. 124; Crim. Doc. 136 at 37). The Court entered judgment on June 4, 2009. (Crim. Doc. 125). Petitioner appealed, and the Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentences. (Crim. Doc. 143).

## II.   Legal Standard

The Sixth Amendment to the United States Constitution provides for a right to counsel for criminal defendants "to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684 (1984). "[T]he right to counsel is the right to the effective assistance of counsel." Id. at 686 (quotation marks omitted). The Supreme Court of the United States established a two-part test for determining whether a convicted person is

---

[2] Counts Two and Three in the Indictment were renumbered as Counts One and Two for the purposes of the jury trial.

entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. Id. at 687-88.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (quotation marks omitted). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690; accord Gates v. Zant, 863 F.2d 1492, 1497 (11th Cir. 1989). The test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under these rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

To show that deficient performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

3

of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to claims of ineffective assistance of trial counsel under Strickland." See Sairras v. Fla. Dep't of Corr., 496 F. App'x 28, 34 (11th Cir. 2012) (citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)). "[T]he Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." Heath, 941 F.2d at 1130-31. To determine if prejudice occurred where appellate counsel does not raise a particular claim on appeal, the Court must first review the merits of the omitted claim. See id. at 1132. Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal." Id.

## III. Analysis

### A. Claim One

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to challenge the veracity of an affidavit supporting a search warrant for his property. (Doc. 10 at 11). This claim is without merit.

On August 6, 12, and 13, 2008, a confidential informant ("CI") made three controlled drug buys of cocaine at Unit A of a building owned by Petitioner located at 2256 Monroe Street in Palm Bay, Florida. (See Crim. Doc. 84 at 1-5). State agents sought and obtained three separate search warrants based on some or all of these controlled buys. (See Crim. Docs. 33-2, 33-3, & 33-4). Agents searched both Unit A and Unit B of the building at 2256 Monroe Street, and they also searched a home located at 2405 Anchor Road in Palm Bay. (See Crim. Doc. 84 at 1). The Court granted a motion to suppress evidence seized from

4

Unit B but denied the motion to suppress evidence obtained from Unit A and the Anchor Road residence. (Id. at 19-20).

A state court judge issued a warrant for the search of Unit A based on a sworn affidavit of Officer Mark Scammell of the Palm Bay Police Department. (See Doc. 33-2). Petitioner asserts that Officer Scammell's statement in that affidavit that he maintained visual contact with the CI during the August 6 controlled buy is incredible because it is impossible to maintain visual contact at that location. (Doc. 10 at 11 at 11-15; see also Crim. Doc. 33-2 at 6-7; Crim. Doc. 132 at 57 & 67). Thus, Petitioner contends that Officer Scammell incorporated false statements into the affidavit and that evidence obtained from searches based on that affidavit should have been suppressed. (Doc. 10 at 15). Petitioner also alleges that Officer Scammell's statements regarding the controlled buy are contradicted by several other pieces of evidence. (Doc. 17 at 6). Accordingly, Petitioner argues that his trial counsel was ineffective for failing to challenge the veracity of the affidavit supporting the search warrant for Unit A. (See Doc. 10 at 11-15).

"There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978). A criminal defendant may, however, challenge the validity of such an affidavit and establish the right to a hearing on the issue by alleging "deliberate falsehood or . . . reckless disregard for the truth . . . accompanied by an offer of proof." Id. Here, defense counsel did just that. Prior to trial, defense counsel moved to suppress evidence obtained from the three searches. (Crim. Docs. 33 & 58). In doing so, counsel specifically challenged the veracity of the affidavits, (Crim. Doc. 58 at 1), and argued that Franks mandated an evidentiary hearing, (Crim. Doc. 33 at 11). The Court granted the request for an evidentiary hearing, and during the hearing

counsel specifically addressed alleged misstatements in the affidavits and the applicability of Franks. (Crim. Doc. 131 at 3, 203-07, 217-18, & 232-33). Counsel also questioned Officer Scammell at the suppression hearing on how he maintained visual contact during the controlled buys. (Id. at 48-51). Clearly, counsel raised the issue of the alleged misstatements contained in the affidavits.

Even if counsel had not raised the issue of alleged misstatements, this claim would fail because Petitioner has not demonstrated that Officer Scammell's statements regarding his visual contact were false.[3] In addition to Officer Scammell's testimony that he was able to maintain contact with the CI, (id.), his supervisor testified at the suppression hearing, and another officer testified at trial, that they were able to maintain visual contact with the CI during the August 12 controlled buy,[4] (id. at 100-105; Crim. Doc. 133 at 128, 131, & 141). Petitioner speculates, however, that there is no way Officer Scammell could have maintained visual contact during the controlled drug buys without being detected. (Doc. 10 at 15). In support of this claim, Petitioner submits an affidavit by a private investigator he hired stating that it would have been "virtually impossible" for Officer Scammell to maintain visual contact of the CI from the vantage point at which Officer Scammell testified he was located. (Doc. 17-1 ¶ 6; see also Doc. 10 at 15). This submission is insufficient to

---

[3] In Claim One, Petitioner appears to argue only that Officer Scammell's statements regarding visual contact were false. In Claim Two, Petitioner contends that Officer Scammell made other false statements; these statements are not addressed in the discussion of Claim One.

[4] Though Officer Scammell testified that he did not maintain visual contact with the CI the entire time during the August 13 controlled buy, this difference may be explained by the fact that Officer Scammell and the CI took a different route to the location on August 13. (Crim. Doc. 131 at 79-80). The Unit A search warrant was not based on the August 13 controlled buy. (See Crim. Doc. 33-2).

rebut the affidavit's presumption of validity. For these reasons, counsel's conduct regarding Claim One was not deficient, and Claim One is denied.

## B. Claim Two

Petitioner next alleges that trial counsel was ineffective for failing to challenge the Government's reliance on the good-faith exception to the exclusionary rule under United States v. Leon, 468 U.S. 897 (1984),[5] to support the search of the Anchor Road residence. (Doc. 10 at 16-18). Petitioner argues that trial counsel failed to make three objections with regard to the Leon exception: 1) that the Anchor Road warrant failed to describe with particularity the things to be seized; 2) that the Anchor Road search exceeded the scope of the warrant[6]; and 3) that Officer Scammell made misrepresentations in the search warrant affidavit, rendering Leon inapplicable. (Id. at 17-18).

In the motion to suppress, defense counsel argued that there was no probable cause to search the Anchor Road location and noted that the affidavit supporting the

---

[5] Leon provides an exception to the exclusionary rule when police officers act in good faith and reasonably rely on a search warrant. 468 U.S. at 920-22.

[6] In connection with this argument, Petitioner argues in his Reply that "[b]ecause Officer Bowden actually performed the search but failed to read the supporting affidavit before executing the facially invalid warrant, he could not have reasonably and in good faith relied on this warrant or affidavit." (Doc. 17 at 7). Petitioner also argues that Officer Bowden seized many items that were unrelated to the scope of the warrant. (Id. at 7-8). Petitioner did not properly assert these arguments because he raised them for the first time in his Reply. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." (quotation marks omitted)). Even if these arguments had been properly raised, Petitioner's argument would fail. Officer Bowden testified at trial that he did not remember whether he had seen the affidavit in support of the search warrant, (Doc. 133 at 146); this testimony would not have been sufficient to suppress the evidence from the Anchor Road residence. Petitioner has also not explained how most of the items allegedly seized were relevant to his case. To the extent the evidence was relevant, Petitioner has not shown that he suffered prejudice from counsel's failure to call Officer Bowden at the suppression hearing.

Anchor Road search warrant merely stated that the purpose of the warrant was to find the investigative funds and hopefully more cocaine and firearms. (Crim. Doc. 33 at 12-13). During the suppression hearing, defense counsel further argued that the affidavit was "so lacking in indicia of probable cause as to render official belief unreasonable." (Crim. Doc. 131 at 217). Defense counsel also argued that the search warrant affidavits were misleading. (Id. at 64-65, 203-07, 217-18, & 232-33; see also Crim. Doc. 33 at 14; Crim. Doc. 132 at 26-27). In making these arguments, defense counsel argued that the good faith exception under Leon was not applicable and that the evidence seized from the Anchor Road residence should be suppressed.

Even if counsel had made additional Leon-based arguments regarding the deficiencies of the Anchor Road search, the result of the suppression hearing would have been the same. The Court thoroughly considered the matter and concluded that while Officer Scammell's affidavit did not establish probable cause to search, the Leon exception applied to the search of the Anchor Road residence. (Crim. Doc. 84 at 16-19). Additionally, with regard to Officer Scammell's allegedly false statements, (see Doc. 10 at 18), there is no evidence that Officer Scammell made these statements deliberately or with reckless disregard for the truth. Therefore, Petitioner has not shown that the Court would have granted the motion to suppress with regard to the Anchor Road residence had counsel made these additional arguments. Consequently, Claim Two is denied.

## C.    Claim Three

Petitioner argues that he was denied his right to testify at trial because both trial counsel and the Court failed to advise him of this right. (Doc. 10 at 19; Doc. 17 at 8-9). Petitioner contends that his testimony would have aided his defense by providing information as to his whereabouts during the August 6 and 12 controlled buys. (Doc. 10 at

8

19). Further, Petitioner states that he could have explained to the jury why he was present at Unit A when the search warrant was executed on August 13, 2008. (See id.). In his Reply, Petitioner also argues that his testimony would have exposed the inconsistencies in Officer Scammell's testimony. (Doc. 17 at 9).

"'[A] criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial.'" United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (emphasis omitted). "Defense counsel invades this right by either refusing to accept the defendant's decision to testify or failing to inform the defendant of the right to testify." Miller v. United States, 562 F. App'x 838, 843 (11th Cir. 2014); accord Teague, 953 F.2d at 1534.

Upon review of the record, it appears that the Court did not discuss with Petitioner his right to testify during trial. (Crim. Docs. 132-35). And there is no record evidence indicating whether trial counsel informed Petitioner of his right to testify. "If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment." Miller, 562 F. App'x at 843 (citing Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000)). However, even assuming counsel failed to inform him of this right and therefore Petitioner could establish deficient performance, Petitioner has not demonstrated prejudice. Petitioner has not alleged what his specific testimony would have been; he only conclusorily asserts that he would have explained to the jury his whereabouts and why he was present at the Unit A apartment when the search warrant was executed. (See Doc. 10 at 19). Additionally, the Court has reviewed the entire transcript from the trial and concludes that the evidence against

Petitioner was overwhelming.[7] Therefore, a reasonable probability does not exist pursuant to Strickland that had Petitioner testified, the outcome of trial would have been different. See Franklin v. United States, 227 F. App'x 856, 860 (11th Cir. 2007) (affirming the district court's determination that the petitioner could not show prejudice in his ineffective assistance of counsel claim based on failure to advise of the right to testify after "[t]he district court properly assessed [the petitioner's] proffered testimony in light of the evidence adduced at trial that implicated him in the criminal activities"); Miller, 562 F. App'x at 844 (reviewing the evidence against the petitioner presented at trial and concluding that petitioner could not establish prejudice on a similar claim). Accordingly, this claim is denied.

## D. Claims Four and Five

In Claim Four, Petitioner asserts that trial counsel was ineffective for failing to object to and preserve for appeal the trial court's denial of his motion in limine, which was based primarily on Federal Rule of Evidence 404(b). (Doc. 10 at 20; see also Crim. Doc. 100). The motion sought to exclude, in relevant part, testimony regarding the three controlled drug purchases and a note that was found in Petitioner's possession containing Officer Scammell's personal information, (Crim. Doc. 100), but the Court admitted evidence of both. Petitioner argues that trial counsel was ineffective for failing to argue that even if the evidence was otherwise admissible, the danger of unfair prejudice outweighed its probative

---

[7] For example, the officers found cocaine and numerous firearms in the Unit A apartment when the police officers executed the search warrant. (Crim. Doc. 132 at 72-73; Crim. Doc. 134 at 19-24, 28-52, & 57-70). Officer Waldron observed Petitioner jumping out of a window of Unit A when the search warrant was executed. (Crim. Doc. 133 at 168-69). Additionally, firearms and money from the controlled buy were found at the Anchor Road residence. (Crim. Doc. 132 at 79-83; Crim. Doc. 133 at 133-36).

value under Rule 403 of the Federal Rules of Evidence. (See Doc. 10 at 20). Additionally, Petitioner contends that counsel failed to request a limiting jury instruction after this evidence was presented to the jury.[8] (Id.). Similarly, in Claim Five Petitioner contends that trial counsel was ineffective for failing to request a cautionary instruction that Petitioner was "not on trial for the three drug sales" and that those three controlled drug buys could not be the basis on which to convict Petitioner. (Id. at 22).

Petitioner's claims are refuted by the record. Counsel vehemently argued the motion in limine and objected to the Court's denial of the motion. (Crim. Doc. 132 at 16-21 & 47-48; Crim. Doc. 133 at 65). Though the motion was primarily based on Rule 404(b), counsel also cited Rule 403 and argued that the evidence should be excluded because a danger of unfair prejudice outweighed its probative value, (Crim. Doc. 100 at 3; Crim. Doc. 132 at 17-18 & 47), and that the note in particular should be excluded because it may confuse the jury, (Crim. Doc. 132 at 19-20). Also, the Court initially granted Petitioner's motion, only allowing the note to come in if Petitioner argued that he was merely present at the location—in the wrong place at the wrong time. (Crim. Doc. 132 at 23-24). When Petitioner did argue that defense, the Court allowed the note to be admitted. (Id. at 47-48). Rather than showing deficient performance with respect to the motion in limine, the record reveals that trial counsel adequately argued this issue and achieved partial success.

These objections preserved this issue for appeal. In any event, these claims would not have been successful on appeal. The evidence of the three controlled drug buys was

---

[8] In his Reply, Petitioner essentially concedes that trial counsel argued that Rule 403 should prevent the admission of the controlled buy evidence at trial and focuses his argument on trial counsel's failure to request a limiting jury instruction. (Doc. 17 at 9 ("[Trial counsel] argued extensively about the undue prejudice of the admission of the three controlled buys into evidence, however, he did not request limiting instructions.")).

admissible pursuant to Rule 404(b), which provides that evidence of other bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); see also United States v. McNair, 605 F.3d 1152, 1203 (11th Cir. 2010) (noting that Rule 404(b) allows for introduction of "evidence that is 'inextricably intertwined' with evidence of the charged offense" and evidence that would "complete the story of the crime for the jury"). Evidence of the controlled drug buys was inextricably intertwined with the offense; these drug buys explain why police searched Unit A and the Anchor Road residence on August 13, 2008, and they "complete the story of the crime for the jury." The evidence of the note was relevant to prove that Petitioner was not merely present at the scene where drugs were found and instead shows that he was aware that he was being investigated by Officer Scammell for narcotics. Further, Rule 403 would not serve as a basis for exclusion because there is no indication that the probative value of the evidence was outweighed by a danger of unfair prejudice or misleading the jury.

Regarding Petitioner's claims of the necessity of a cautionary instruction in Claims Four and Five, Petitioner has not demonstrated that such an instruction was necessary. The Court instructed the jury that Petitioner was on trial only for the offenses charged in the Indictment. (Crim. Doc. 113 at 16; Crim. Doc. 135 at 70-71). Moreover, apart from the note and the testimony regarding the drug purchases, there was more than sufficient evidence to convict Petitioner of the charged offenses. Thus, Petitioner has not demonstrated either deficient performance or prejudice pursuant to Strickland. Accordingly, Claims Four and Five are denied.

12

### E.   Claim Six

Petitioner alleges that trial counsel failed to present a "mere presence" defense, ask for a "mere presence" jury instruction, or argue that Petitioner's mere presence at Unit A when the search warrant was executed did not amount to guilt. (Doc. 10 at 23). In other words, Petitioner contends that trial counsel agreed to argue that Petitioner was just "passing through" Unit A at the time of the search warrant and that he was merely in the wrong place at the wrong time but that in fact trial counsel failed to argue this defense at the trial. (Id.).

This claim is refuted by the record. Counsel strenuously argued to the jury that Petitioner was present at Unit A only because he owned the apartment and that he was not connected to the drugs or guns. (Crim. Doc. 135 at 35-38 & 48). Counsel also requested a "mere presence" instruction from the Court, but the Court advised counsel that the pattern jury instructions were generally sufficient. (Crim. Doc. 134 at 4-5). In this case a "mere presence" jury instruction was unnecessary because the Court instructed the jury that in order for them to convict Petitioner, the Government had to prove that Petitioner knowingly and willfully possessed and intended to distribute the cocaine and knowingly used and actively employed the firearms. (Crim. Doc. 113 & 9-15; Crim. Doc. 135 at 66-70). The jury was aware of Petitioner's asserted defense and rejected it. Petitioner cannot demonstrate that counsel's actions constitute deficient performance or resulted in prejudice. Therefore, Claim Six is denied.

### F.   Claim Seven

Petitioner also asserts that counsel was ineffective for failing to request a cautionary instruction telling the jury that the CI was a drug addict and that his testimony should be considered with caution. (Doc. 10 at 24). In his Reply, Petitioner for the first time cites

13

authority that he was entitled to a cautionary instruction because the witness was a confidential informant. (Doc. 17 at 10-11 (citing United States v. Williams, 59 F.3d 1180, 1183-84 (11th Cir. 1995))). Petitioner also contends that counsel failed to pursue counsel's initial request that the Court instruct the CI that he could be prosecuted for perjury if he lied during his testimony. (Doc. 10 at 24).

Petitioner is correct that counsel did not ask for a cautionary jury instruction with regard to the CI's testimony, but the Court gave a general instruction about witness credibility. The Court instructed the jury regarding witness testimony as follows:

> In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

> You should also ask yourself whether there was evidence tending to prove that a witness testified falsely concerning some important fact; or, whether there was evidence that at some other time a witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

> You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

(Crim. Doc. 113 at 5-6). This instruction informed the jury that they could consider whether any witness, including the CI, had a motive to lie or give false testimony or may not have a good memory.

14

However, as Petitioner argues in his Reply, defendants may be "entitled to a special jury instruction on the credibility of a Government informer." Williams, 59 F.3d at 1183; see also United States v. Luck, 611 F.3d 183, 188-90 (4th Cir. 2010). This instruction is required "if the defendant requests it and the testimony implicating the accused is elicited solely from the informer." Williams, 59 F.3d at 1183. "The purpose behind such a policy is to ensure that no verdict based solely on the uncorroborated testimony of a witness who may have good reason to lie is too lightly reached." Id. This instruction was not required here, however, because the evidence against Petitioner was not elicited solely from the informer. In fact, as discussed above, overwhelming evidence against Petitioner was presented to the jury. Additionally, Petitioner points to no requirement that a jury be instructed about the testimony of an addict in particular, and there is no evidence that the CI's memory or senses were altered at the time of the events or of his testimony. Because the requirement to give a special informant instruction was not clearly applicable or necessary here, it was not deficient performance for counsel to fail to request such an instruction. Even if the failure to request this instruction was deficient performance, any failure of counsel to request such an instruction was not prejudicial to Petitioner due to the overwhelming other evidence against Petitioner and the fact that trial counsel raised the issue of the CI's credibility on cross-examination and in closing arguments. (See Crim. Doc. 133 at 105-22; Crim. Doc. 135 at 38-40).

Petitioner's claim that counsel should have further pursued an "admonishment instruction" from the Court, which would have advised the CI that if he lied he could be prosecuted for perjury, is also without merit. Petitioner cites no authority for the necessity of this instruction. (See Doc. 10 at 24; Doc. 17). In fact, trial counsel did request such an

15

instruction from the Court, but the request was denied. (Crim. Doc. 101; Crim. Doc. 132 at 25 & 84-88). Counsel then began his cross-examination of the CI by asking him: "You understand if you don't tell the truth you'll be committing perjury?" (Crim. Doc. 133 at 105). Considering all of these facts, counsel's pursuit of this issue was more than satisfactory, and Petitioner has not shown deficient performance. Therefore, Claim Seven is denied.

## G. Claim Eight

Petitioner asserts in Claim Eight that trial counsel and appellate counsel failed to "object to or raise on appeal the prosecutor's misconduct and improper closing statements." (Doc. 10 at 25). Petitioner contends that the prosecutor allowed the CI's "false testimony" to go uncorrected and also made improper closing arguments in which he vouched for the CI and argued facts not in evidence. (Id. at 25-26). Petitioner also argues that the prosecutor manipulated the evidence by implying conclusions that were not supported by the evidence. (Doc. 17 at 11-12). He claims that his trial and appellate counsel were ineffective because they failed to object or raise this issue on appeal.[9] (Doc. 10 at 25).

To demonstrate prosecutorial misconduct with regard to remarks made during trial, "'a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). "Attempts to bolster a witness by vouching for his credibility are . . . improper if the jury could reasonably believe that the prosecutor indicated

---

[9] Notably, trial counsel did move for mistrial based on prosecutorial misconduct, arguing that the prosecutor was implying that Petitioner was responsible for uncharged narcotics activity in the neighborhood. (Crim. Doc. 133 at 55-57). That motion was denied. (Id.).

16

a personal belief in the witness' credibility." Id. (quotation marks omitted). "A jury could reasonably believe the prosecutor's indications if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony. In short, the government cannot argue the credibility of a witness based on the government's reputation or allude to evidence not formally before the jury." Id. (citation omitted).

With regard to Petitioner's claim that the CI gave false testimony, the Court concludes that Petitioner's claim is conclusory and otherwise fails. Petitioner only specifically claims in his motion that one aspect of the CI's testimony was false, arguing that the CI "falsely testified that he did not receive any benefit from the Government for his testimony" when in fact his charges were dismissed in exchange for his testimony.[10] (Doc. 10 at 26). However, the parties stipulated in front of the jury that the CI's charges were dismissed. (Crim. Doc. 133 at 125). The CI also admitted in his testimony that he was told that if he "testified to the truth," the officers would "talk to [the] prosecutor." (Id. at 123). Accordingly, the jury was aware that the CI could potentially benefit from his testimony, and Petitioner's claim is without merit.

---

[10] Petitioner also presents the affidavit of Deborah Samuel (Doc. 20), who attests that she was with Petitioner from 1:00 p.m. until 5:00 p.m. on August 12, 2008. To the extent Petitioner relies on this affidavit to show the falsity of the CI's testimony, it does not render the CI's testimony patently false. The CI did not testify as to when the controlled buy occurred. Officer Bowden stated that he first met with the CI on August 12, 2008, at around 4:00 p.m. before the CI went to Unit A to complete the buy. (Crim. Doc. 133 at 128). The controlled buy could have taken place after Petitioner arrived back at Unit A. Additionally, this potential witness's affidavit does not call into question the testimony regarding the August 6 and 13 controlled buys.

17

And the prosecutor did not improperly vouch for the CI. The prosecutor argued that the CI's testimony could be considered credible based on the evidence presented, not because the prosecutor personally believed that the CI was credible or because the prosecutor placed the prestige of the Government behind the witness. (See, e.g., Crim. Doc. 135 at 25-26 & 29). This does not constitute prosecutorial misconduct. United States v. Epps, 613 F.3d 1093, 1100-01 (11th Cir. 2010) ("No reversible error exists where the Government simply [makes] explicit an inference that the jury could have drawn from the evidence." (alteration in original) (quotation marks omitted)).

Finally, Petitioner's argument that the Government made statements regarding facts not in evidence also fails. Petitioner contends that the Government implied that Petitioner was in the living room of Unit A when police entered to execute the search warrant and that the keys on the table belonged to Petitioner. (Doc. 17 at 12). These inferences could easily have been drawn by the jury based on the evidence presented, and Petitioner has not shown that these remarks were improper. Petitioner also contends that the Government argued that money was found in Petitioner's safe without presenting the money to the jury. (Id.). However, multiple witnesses testified that money used by the CI in the controlled buys was found in Petitioner's safe at his residence. (Crim. Doc. 132 at 79-80; Crim. Doc. 133 at 135-36). Given this testimony, introduction of the money was unnecessary.

The Court has reviewed the prosecutor's closing arguments, (Crim. Doc. 135 at 20-30 & 52-60), and concludes that Petitioner has not demonstrated that the prosecutor made improper remarks or that any statements prejudicially affected Petitioner's rights.

18

Accordingly, counsel's failure to object and appellate counsel's failure to raise this claim were not deficient performance and did not result in prejudice. Claim Eight is denied.

## H.    Claim Nine

Petitioner alleges that trial and appellate counsel failed to object and argue that the Indictment was improperly amended or broadened to support an alternative offense under 18 U.S.C. § 924(c) that was not charged. (Doc. 10 at 27). Petitioner maintains that the Government improperly relied on the August 13, 2008 controlled buy to prove that he used a firearm during a drug offense, which broadened the Indictment. (Id.; Doc. 17 at 12).

A defendant's Fifth Amendment grand jury right is violated when an indictment is constructively amended by "broadening the possible bases for conviction from that which appeared in the indictment." United States v. Miller, 471 U.S. 130, 138 (1985) (emphasis removed); see also United States v. Dortch, 696 F.3d 1104, 1111 (11th Cir. 2012) ("An indictment is constructively amended when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." (quotation marks omitted)).

Count Three of the Indictment—which was renumbered to Count Two for jury consideration—charged Petitioner with knowingly using or carrying a firearm during and in relation to a drug trafficking crime, namely the possession with intent to distribute cocaine hydrochloride and cocaine base charged in the original Count Two. (Crim. Doc. 1). The CI testified that when he purchased drugs from Petitioner during the controlled buys—including on August 13—Petitioner had a gun on the table where he sat and that there were other guns scattered throughout Unit A. (Crim. Doc. 133 at 90, 95, & 101).

This testimony about the controlled buys did not improperly amend or broaden the Indictment because, as noted above, it merely served to provide background information

and complete the story of the crime for the jury. It did not present the jury with different offenses or broaden the possible bases for conviction. Additionally, the August 13 controlled buy could be considered by the jury as a basis to convict because the Indictment charged that Petitioner used a firearm in relation to a drug trafficking crime on August 13. (Crim. Doc. 1). Moreover, the Government presented sufficient evidence from the search on August 13 alone to obtain a conviction based on the conduct charged in the Indictment.[11] (See, e.g., Crim. Doc. 134 at 19-24, 28-52, 57-70). Therefore, trial counsel had no basis to object, and the failure to do so did not amount to deficient performance. Additionally, because there is no reasonable probability that this claim would have been successful on appeal, Petitioner cannot demonstrate either deficient performance or prejudice with respect to appellate counsel. Claim Nine is therefore denied.

**I.    Claim Ten**

Next, Petitioner alleges that trial counsel was ineffective for failing to request a cautionary instruction stating that he could not be convicted of the § 924(c) firearm offense based on the controlled buy conduct. (Doc. 10 at 28). As discussed earlier with regard to Claims Four and Five, the Court instructed the jury that Petitioner was on trial only for the offenses charged in the Indictment. (Crim. Doc. 113 at 16; Crim. Doc. 135 at 70-71). And, as also discussed above, the evidence introduced from the search to convict Petitioner of the § 924(c) offense was overwhelming. (See, e.g., Crim. Doc. 134 at 19-22 (Detective Graves describing the large number of guns found at the scene)). Although trial counsel did not request a cautionary jury instruction with regard to the controlled buy evidence,

---

[11] The Eleventh Circuit concluded that the evidence was sufficient to support a conviction for a violation of 18 U.S.C. § 924(c). United States v. Parker, 411 F. App'x 220, 223 (11th Cir. 2010).

20

there is no reasonable probability under Strickland that the outcome of trial would have been different had the Court given this additional instruction. Therefore, Claim Ten is denied.

## J. Claim Eleven

Petitioner contends that trial counsel was ineffective for failing to object to the Court's jury instructions regarding the firearm count, which Petitioner asserts "constructively amended the indictment." (Crim. Doc. 10 at 29). Specifically, Petitioner argues that the instructions broadened the Indictment by conflating "use" with "possession." (Id.).

Petitioner points to the following instruction, which the Court gave to the jury:

The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may also have sole possession or joint possession.

A person who knowingly has direct physical control of something is then in actual possession of it.

A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, that possession is sole. If two or more persons share possession, such possession is joint.

Whenever the word "possession" has been used in these instructions it includes constructive as well as actual possession, and also joint as well as sole possession.

(Crim. Doc. 113 at 13). Although Petitioner contends that this instruction—a pattern instruction that was given after both offense instructions—broadened the Indictment as to the firearm count, it pertained to the charge for possession with intent to distribute cocaine (renumbered Count One), not the firearm count. The instructions as to Count One stated that for conviction the Defendant must have possessed cocaine base, while the Count Two

instructions informed the jury that "more than a showing of mere possession of a firearm" is required to find use of a firearm under § 924(c). (Crim. Doc. 113 at 9-12). The instruction regarding the meaning of "possession" pertained to Count One and did not constructively amend the Indictment as to Count Two. Counsel's failure to object does not amount to deficient performance, and Claim Eleven is denied.

## K. Claim Twelve

In his twelfth claim, Petitioner also argues that trial counsel was ineffective by failing to object to the jury instruction regarding use of a firearm. (Doc. 10 at 30). Petitioner contends that the following instructions were erroneous:

> To "use" a firearm requires more than a showing of mere possession of a firearm by a person who commits a drug trafficking offense; there must be evidence showing active employment of a firearm by the Defendant. And, to use a firearm "in relation to" an offense means that there must be a connection between the Defendant, the firearm, and the drug trafficking offense so that the use of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity.

(Crim. Doc. 113 at 11-12). Petitioner contends that the instruction should have read: "mere presence of a firearm is insufficient to show use during and in relation to a drug trafficking crime." (Doc. 10 at 30). Petitioner alleges that trial counsel should have objected to the instruction given. (Id.).

The Indictment charged Petitioner with using and carrying a firearm in relation to a drug trafficking crime. (Crim. Doc. 1). "[M]ere presence" of a firearm at the scene of a crime is insufficient to convict a defendant of using a firearm in furtherance of a drug trafficking crime. United States v. Poole, 878 F.2d 1389, 1393 (11th Cir. 1989).

The Court instructed the jury that in order for Petitioner to be found guilty of violating § 924(c), use of a firearm could not be accidental or coincidental and there must be a

connection between the defendant, the firearm, and the underlying charge. (Crim. Doc. 113 at 12); see Smith v. United States, 508 U.S. 223, 238 (1993) (noting that "in relation to" requires that a firearm "have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence"). Additionally, in response to a question by the jury, the Court instructed the jury that "use" means "more than mere possession and more than proximity and accessibility. It requires[] steady, active employment of the weapon as by brandishing or displaying it in some fashion." (Crim. Doc. 135 at 85). Petitioner has failed to point to a substantive difference between his requested "mere presence" instruction and the instruction given. The jury instructions that were given sufficiently and accurately explained that mere presence and mere possession were insufficient to convict Petitioner under § 924(c). Therefore, counsel's failure to object to the jury instructions was not deficient performance and did not result in prejudice. Claim Twelve is denied.

### L. Claim Thirteen

Petitioner also contends that trial and appellate counsel were ineffective for failing to object or raise on appeal the issue that the trial court gave the jury a supplemental instruction regarding the firearm charge rather than referring the jury back to the original instruction. (Doc. 10 at 31). The jury asked the Court whether using a firearm as a deterrent means employing or using it. (Crim. Doc. 135 at 81). The Court told the jury, in accordance with a note from the Eleventh Circuit Pattern Jury Instructions: "My response to you is uses within the meaning of Section 924(c)1 means more than mere possession and more than proximity and accessibility. It requires[] steady, active employment of the weapon as by brandishing or displaying it in some fashion." (Id. at 81 & 85). Petitioner argues that this supplemental instruction led to jury confusion. (Doc. 17 at 13).

23

"A trial court's response to a jury's question is entrusted to its own sound discretion . . . ." United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991). This Court has found no requirement that it read back the original jury instruction. In addition, the supplemental jury instruction given by the Court was similar to the original instruction. (Compare Crim. Doc. 135 at 85, with Crim. Doc. 113 at 11-12). In fact, the supplemental instruction was in some ways more beneficial to Petitioner than the original instruction. (See Crim. Doc. 135 at 85 ("['Uses'] requires steady, active employment of the weapon as by brandishing or displaying it in some fashion.")).

Because this supplemental instruction was not error, Petitioner has demonstrated neither deficient performance on the part of trial counsel nor prejudice. Moreover, Petitioner has not met his burden of demonstrating there is a reasonable probability that this claim would have been successful on appeal. Therefore, Claim Thirteen is denied.

**M.    Claim Fourteen**

Petitioner next asserts that trial counsel was ineffective for failing to call Officer Javon Brown as a defense witness. (Doc. 10 at 32). According to Petitioner, Officer Brown could have refuted the Government's claim that Petitioner was in the living room of Unit A when the officers executed the search warrant. (Id.). Petitioner argues that this was material because if he was not in the living room, "the Government's § 924(c) 'use' count becomes frivolous." (Doc. 17 at 14).

At the suppression hearing, Officer Brown testified that he was present for the execution of the Unit A search warrant on August 13, 2008, and that he did not see Petitioner in the apartment. (Crim. Doc. 131 at 184-85). Officer Brown did not testify at trial. However, Officer Waldron testified at trial that he was present during the execution of the Unit A search warrant and observed Petitioner jump out of a window. (Crim. Doc.

24

133 at 167-69). Officer Brown's testimony that he did not see Petitioner in the apartment is not inconsistent with Officer Waldron's testimony that Petitioner quickly exited the apartment. Officer Brown's testimony would have added nothing contrary to the officer testimony at trial, and it would not have changed the jury verdict. Therefore, counsel's failure to call this witness did not result in prejudice. Claim Fourteen is denied.

## N.  Claim Fifteen

In his next claim of ineffective assistance, Petitioner states that trial counsel failed to impeach Officer Scammell with prior inconsistent statements. (Doc. 10 at 33). Petitioner first contends that Officer Scammell failed to tell DEA agents in a sworn statement about the August 12 controlled buy. (Id.). However, Officer Scammell testified that he was not present during the August 12 controlled buy,[12] so his statements are not necessarily inconsistent. (Crim. Doc. 132 at 65; see also Crim. Doc. 133 at 128). Whether Officer Scammell notified the DEA regarding the August 12 controlled buy or included it in the Anchor Road warrant application was irrelevant to the issues at trial. And the decision not to impeach Officer Scammell on this issue may have been a tactical one because such impeachment would have reminded the jurors of the August 12 controlled buy. See Fugate v. Head, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney." (quotation omitted)). Accordingly, it was not deficient performance to fail to impeach Officer Scammell on this issue. Furthermore, Petitioner did not suffer prejudice from this decision. Id. ("Absent a showing of a single specific instance where cross-examination arguably

---

[12] Other officers, including his supervisor, were present. (Crim. Doc. 131 at 102; Crim. Doc. 133 at 128).

could have affected the outcome of either the guilt or sentencing phase of the trial, the petitioner is unable to show prejudice necessary to satisfy the second prong of Strickland." (quotation omitted)).

Petitioner also claims that Officer Scammell's statement that he did not investigate Petitioner and was not familiar with Petitioner prior to August 6, 2008, was untrue. (Doc. 10 at 33-34; see also Crim Doc. 131 at 12; Crim. Doc. 132 at 50-52). In support of this assertion, Petitioner points to the affidavit in support of the Anchor Road search warrant, which refers to a second CI who had relayed similar information regarding Petitioner's criminal drug activities for approximately six months prior to Officer Scammell obtaining the search warrant. (Crim. Doc. 33-4 at 8). However, Officer Scammell's statement at trial was not necessarily inconsistent with the statement in the affidavit. Officer Scammell may have become familiar with Petitioner on August 6, 2008, at which time he learned that another confidential informant had been providing information on Petitioner as well. Indeed, Officer Scammell testified at the suppression hearing that another officer informed him of the second CI. (Crim. Doc. 131 at 62). Additionally, as mentioned above, the decision not to impeach Officer Scammell regarding these statements may have been a tactical choice made by defense counsel because it would draw the jury's attention to a possible second CI. Therefore, counsel was not deficient for failing to impeach Officer Scammell on this matter.

Finally, Petitioner asserts that Officer Scammell's testimony regarding the August 6 controlled buy conflicts with the CI's version of the events—specifically, the route the CI took to get to Unit A and whether his car was parked in the driveway. (Doc. 10 at 34). However, in their testimony Officer Scammell and the CI did not contradict each other

regarding the route used to get to Unit A or whether the CI was parked in the driveway. (Compare Crim. Doc. 131 at 49 (Officer Scammell testifying that they drove north to get to the location and that the CI parked in front of the house), and Crim. Doc. 132 at 56-58 (Officer Scammell testifying that on August 6, the CI parked in front of the house and to the right, referencing a photo exhibit), with Crim. Doc. 133 at 87 (the CI testifying that on August 6, he parked in the driveway)). To the extent that their testimony conflicted on these issues, the conflicts were not material. Therefore, trial counsel's failure to impeach Officer Scammell on the above matters was not deficient performance, nor did it prejudice Petitioner.[13] Accordingly, Claim Fifteen is denied.

## O. Claim Sixteen

Petitioner alleges that appellate counsel was ineffective for failing to argue that the Government did not prove that the substance he possessed was crack cocaine for purposes of sentencing under 21 U.S.C. § 841. (Doc. 10 at 35). Petitioner states that because the Court found at sentencing that he possessed crack cocaine, his sentence was improperly enhanced and appellate counsel should have raised this issue.[14] (Id.).

---

[13] To the extent Petitioner asserts that Officer Scammell's testimony at the suppression hearing conflicts with his statements in the affidavit in support of the search warrant, Petitioner is incorrect. Officer Scammell testified as to the route taken to Unit A on August 6 at the suppression hearing. (Crim. Doc. 131 at 49). The affidavit in support of the search warrant merely gives directions to Unit A and does not specifically state which route the CI used to get to Unit A on August 6. (Crim. Doc. 33-2). Therefore, counsel was not deficient for failing to raise this matter.

[14] Petitioner also argues that the Court's finding at sentencing that he was responsible for other controlled substances was error. (Doc. 10 at 36). With respect to this issue, Petitioner does not appear to raise an ineffective assistance of counsel claim or another claim cognizable under § 2255. To the extent that Petitioner does argue ineffective assistance of counsel regarding this issue, his argument is not well-taken. Defense counsel argued this issue at sentencing. (Crim. Doc. 136 at 9-10). Marijuana equivalency under § 2D1.1 of the United States Sentencing Guidelines ("USSG") (2008) was used to determine Petitioner's base offense level under the Guidelines for all of the substances at

27

Section 841(b)(1)(B) provides for mandatory minimum and maximum sentences for possession with intent to distribute certain amounts of various controlled substances. See 21 U.S.C. § 841(b)(1)(B). In the version of § 841 in effect at the time of Petitioner's sentencing, a mandatory sentencing range between five and forty years applied to defendants convicted of possession with intent to distribute five grams or more of a mixture or substance "which contains cocaine base." Id. § 841(b)(1)(B)(iii) (2006).[15] However, this mandatory sentence applies only to crack cocaine, not to other forms of cocaine base. See United States v. Munoz-Realpe, 21 F.3d 375, 377-79 (11th Cir. 1994); United States v. Clark, 265 F. App'x 846, 850 (11th Cir. 2008). Note D to USSG § 2D1.1(c) defines "crack" as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form."

The evidence presented at trial was sufficient to sentence Petitioner to a mandatory sentence under § 841(b). Jeannette Perr, a forensic chemist with the Drug Enforcement Administration (DEA), testified that the DEA laboratory only determines if a drug is cocaine base or cocaine hydrochloride and does not use the term "crack." (Crim. Doc. 134 at 107-10). Patricia Burn, also a DEA forensic chemist, agreed. (Id. at 138-39). Burn tested a

issue, including cocaine, hydrocodone, and marijuana. Under the Guidelines, relevant conduct—acts committed by a defendant "that occurred during the commission of the offense of conviction"—can be considered by the Court in determining the base offense level. USSG § 1B1.3(a). The Court had sufficient evidence to consider the other controlled substances in determining Petitioner's base offense level.

[15] The amount required to trigger this mandatory sentencing provision has since been increased. See 21 U.S.C. § 841(b)(1)(B)(iii) (stating that possession with intent to distribute 28 grams or more of a mixture containing cocaine base triggers a five-year mandatory minimum sentence). Generally, defendants "should be sentenced under the law in effect at the time of sentencing." United States v. Grimes, 142 F.3d 1342, 1351 (11th Cir. 1998).

tannish or yellowish chunky substance in connection with Petitioner's case that was "wet" and "sticky" and concluded that the substance was 12.3 grams of cocaine base. (Id. at 129-32). Ms. Burn testified regarding two forms of cocaine base, one created during the process of making cocaine hydrochloride that was in the form of a paste, and one that was made by boiling the salt off of cocaine hydrochloride to become harder and rock-like. (See id. at 133-3 4). Ms. Burn opined that the substance she tested was the second form of cocaine base.[16] (Id. at 135-36).

Palm Bay Police Department Detective Clifton Graves testified that he was familiar with crack cocaine and that the substance in question was "chunked up" and looked like crack cocaine. (Id. at 147-50). Additionally, DEA Special Agent Patrick Campbell testified that the seized drug looked like crack cocaine. (Id. at 172). Agent Campbell stated that before the substance was crushed for analysis, it was "more bulky" and had "bigger chunks" but that even at the time of trial it appeared to be crack cocaine. (Id. at 172-73). Although Agent Campbell did not write the term "crack cocaine" in his report, he testified that agents do not make a distinction between crack cocaine and other types of cocaine in their reports. (Id. at 183). After hearing this, and despite a private investigator's testimony for Petitioner that the substance was not crack cocaine, (id. at 202-06), the jury found Petitioner guilty of possessing with intent to distribute five grams or more of "cocaine base, commonly known as crack cocaine," (Crim. Doc. 114 at 1-2).

---

[16] In his Reply, Petitioner challenges Burn's assessment that the substance was the second form of cocaine base because as a chemist Burn "knows that all forms of cocaine are chemically the same and she should not have implied anything different when she testified." (Doc. 17 at 15). Petitioner's argument is not well-taken. Burn testified specifically that she does not test whether a substance is crack cocaine. (Crim. Doc. 134 at 138). Otherwise, she testified based on her expertise as to which type of cocaine base the substance was. (Id. at 133-36). This testimony was proper.

Petitioner is challenging the sufficiency of the evidence establishing that the substance in question was crack cocaine. Courts consider sufficiency of the evidence in the light most favorable to the Government and draw all reasonable inferences in favor of the jury's verdict. See United States v. Williams, 144 F.3d 1397, 1401-02 (11th Cir. 1998). After doing so, the Court concludes that there was sufficient evidence to find that the substance seized was more than five grams of crack cocaine. Appellate counsel's failure to raise this claim on appeal did not result in prejudice because there is no reasonable probability that the claim would have been successful. Therefore, Claim Sixteen is denied.

### P. Claim Seventeen

Petitioner claims that his mandatory five-year sentence for possessing crack cocaine violates the Fair Sentencing Act of 2010 ("FSA").[17] (Doc. 10 at 37). Before the enactment of the FSA, a five-year mandatory sentence was triggered if a defendant possessed 500 grams of powder cocaine or five grams of cocaine base, a 100-to-1 ratio. See 21 U.S.C. § 841(b)(1)(B)(iii) (2006). Since the FSA was enacted in 2010, the ratio is approximately eighteen to one, and the amended statute provides for a five-year mandatory sentence if a defendant possessed 28 grams or more of cocaine base. See 21 U.S.C. § 841(b)(1)(B)(iii) (2010); see also 124 Stat. 2372. However, the FSA does not apply to offenders who committed their crimes and were sentenced prior to August 3, 2010. See United States v. Hippolyte, 712 F.3d 535, 542 (11th Cir. 2013); United States v. Berry, 701 F.3d 374, 377-78 (11th Cir. 2012) (per curiam). Because Petitioner was sentenced in

---

[17] Pub. L. No. 111-220 § 2(a), 124 Stat. 2372 (2010) (amending 21 U.S.C. § 841(b)(1)(B)(iii) "by striking '5 grams' and inserting '28 grams'").

2009, the FSA does not apply to him, and his mandatory sentence of five years under § 841(b)(1)(B)(iii) is not error.[18]

Petitioner's sentence would have remained the same regardless of the five-year mandatory minimum. During the sentencing proceeding, the Court applied a 20-to-1 ratio in order to determine the proper Guidelines range for Petitioner's sentence. (Crim. Doc. 136 at 23). Petitioner's Guidelines range remained the same after the Court applied that ratio instead of the 100-to-1 ratio in effect at the time. (Id. at 24). The Court then sentenced Petitioner to five years on the possession with intent to distribute count. After the Sentencing Commission enacted retroactive revised cocaine base sentencing Guidelines, the parties stipulated that Petitioner's sentencing range remained the same. (Crim. Doc. 153; see also Order, Doc. 154). Petitioner cannot presume that, if the FSA applied, the Court would have changed the sentence. In fact, at sentencing the Court stated that the nature and circumstances of the offense were troubling and that the Court would likely have imposed the same sentence without the mandatory minimum. (Crim. Doc. 136 at 40).

## Q.   Claim Eighteen

Petitioner raises a claim of cumulative error. (Doc. 10 at 39). Courts will reverse a conviction "[u]nder the cumulative-error doctrine . . . where an aggregation of non-reversible errors yields a denial of the constitutional right to a fair trial." United States v.

---

[18] Petitioner also contends the sentence was error because the 12.3 grams of cocaine base contained water. (Doc. 10 at 37). This argument fails. Petitioner acknowledges that 6.6 grams of the substance was cocaine base, (id.), which is more than the five grams required for the mandatory five-year sentence. Moreover, the mandatory sentence applies if a defendant possesses with intent to distribute "5 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii) (2006). Accordingly, the mixture must be five grams or more; whether the mixture contains some water is irrelevant.

Reeves, 742 F.3d 487, 505 (11th Cir. 2014). After considering the cumulative effect of Petitioner's claims, the Court concludes that any alleged errors were not so harmful—even considered cumulatively—as to deprive Petitioner of a fair trial. This claim is denied.

### R. Remaining Claims

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims. (Doc. 10 at 39). "A petitioner is entitled to an evidentiary hearing if he alleges facts which, if true, would warrant habeas relief. A petitioner is *not* entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations and quotation marks omitted). After examining the Petitioner's claims and the record as a whole, the Court concludes that Petitioner's contentions are wholly incredible in the face of the record. Accordingly, Petitioner's request for an evidentiary hearing is denied.

### V. Conclusion

As described herein, Petitioner has failed to show entitlement to relief under 28 U.S.C. § 2255. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Petitioner's amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 10) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of Court is directed to file a copy of this Order in Case No. 6:08-cr-216-Orl-28KRS and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Crim. Doc. 160) pending in that case.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[19] Accordingly, a certificate of appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida, on July 14, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
OrlP-3 7/10
Corey Jermaine Parker
Counsel of Record

---

[19]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing § 2255 Proceedings*, Rule 11, 28 U.S.C. foll. § 2255.